UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
DAMACIO DIAZ RAMIREZ, RIGOBERTO
GARCIA DIAZ, JACINTO MENDEZ DIAZ,
FLORENCIO DIAZ RAMIREZ, SANTOS VICENTE
VASQUEZ HERNANDEZ, SANTOS RAMIREZ
DIAZ, MILTON AROLDO DIAZ ALONSO, HECTOR
JOEL BENTANCOURTH IXCOY, JORGE PONCE,
MILVIA ROSADO and JUAN ANTONIO PEREZ, on
behalf of themselves and all others similarly situated
who were employed by 91-06 Green Grocery Inc.,
91-08 Station Deli Corp., Rainbow Fish Market, Lee
Hee Jo, Hyun Soon Chun, Yun Kyeng Won, John Lee,
and Shin Mi Jung,

               **Plaintiffs,**

      - against -

91-06 GREEN GROCERY INC. d/b/a JAMAICA
GREEN GROCERY, 91-08 STATION DELI CORP.
d/b/a H&Y MEAT MARKET, RAINBOW FISH
MARKET, HEE JO LEE, YUN KYENG WON,
HYUN SOON CHUN, JOHN LEE and SHIN MI JUNG,

               **Defendants.**
-----------------------------------------------------------------X

**Civil Action**

**Index No.: 16-CV-5893**

**Jury Trial Demanded**

## COLLECTIVE AND CLASS ACTION COMPLAINT

1. Plaintiffs Damacio Diaz Ramirez ("Ramirez"), Rigoberto Garcia Diaz ("Diaz"), Jacinto
   Diaz Mendez Diaz ("Mendez Diaz"), Florencio Diaz Ramirez ("Florencio Diaz
   Ramirez"), Santos Vicente Vasquez Hernandez ("Santos Vicente"), Santos Ramirez
   Diaz ("Santos Ramirez"), Milton Aroldo Diaz Alonso ("Alonso"), Hector Joel

Bentancourth Ixcoy ("Ixcoy"), Jorge Ponce ("Ponce"), Milvia Rosado ("Rosado") and Juan Antonio Perez ("Perez") (the "Named Plaintiffs"), individually and on behalf of all others similarly situated (collectively "Plaintiffs"), by their attorneys, Arenson, Dittmar and Karban, upon personal knowledge as to themselves and upon information and belief and investigation of counsel as to other matters, allege as follows:

## NATURE OF THE ACTION

2.   This action arises out of the failure of Defendants 91-06 Green Grocery Inc., 91-08 Station Deli Corp., Rainbow Fish Market (the "Corporate Defendants"), Hee Jo Lee, Yun Kyeng Won, Hyun Soon Chun, John Lee, and Shin Mi Jung (the "Individual Defendants") (collective ely the "Defendants") to pay Plaintiffs the minimum wage, overtime compensation, spread-of-hours pay, and other monies, as required by the Fair Labor Standards Act, 29 U.S.C §§ 201, *et seq.*, ("FLSA") and the New York Labor Law, N.Y. LAB. LAW §§ 190, *et seq.*, § 650, *et seq.* ("NYLL").

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4.   This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

5.   Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), because all or a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of New York.

## PARTIES

6.   Plaintiffs are individuals residing in the State of New York who were employees of Defendants.

7.   Defendant 91-06 Green Grocery Inc., d/b/a Jamaica Green Grocery ("GGI") is a business incorporated in the State of New York, with its principal place of business at 91-06 Sutphin Blvd. Queens, NY 11434.

8.   Defendant 91-08 Station Deli Corp., d/b/a H&Y Meat Market ("H&Y") is a business incorporated in the State of New York, with its principal place of business at 91-08 Sutphin Blvd. Queens, NY 11434.

9.   Upon information and belief, Defendant Rainbow Fish Market ("Rainbow") is a business incorporated in the State of New York, with its principal place of business at 91-02 Sutphin Blvd. Queens, NY 11434.

10.   Upon information and belief, at all relevant times, the Corporate Defendants have had gross sales or business done in excess of $500,000 annually.

11.   Upon information and belief, the Corporate Defendants are engaged in interstate commerce in and through the State of New York.

12.   Upon information and belief, Defendant Hee Jo Lee ("Hee") is a resident of the State of New York and at all relevant times was the Chief Executive Officer of H&Y, a closely-held corporation, as defined by the Business Corporations Law.

13.   Upon information and belief, Defendant Yun Kyeng Won ("Won") is a resident of the State of New York and at all relevant times was an officer, director and/or owner of the Corporate Defendants, including but not limited to, GGI, a closely-held corporation, as defined by the Business Corporations Law.

14.   Upon information and belief, Defendant Hyun Soon Chun ("Chun") is a resident of the State of New York and at all relevant times was an officer, director and/or owner of the Corporate Defendants.

15.   Upon information and belief, Defendant John Lee ("Lee") is a resident of the State of New York and at all relevant times was an officer, director and/or owner of each of the Corporate Defendants.

16.   Upon information and belief, Defendant Shin Mi Jung ("Shin") is a resident of the State of New York, the sister-in-law of Defendant Lee, and at all relevant times was a senior manager of the Corporate Defendants.

17.   Upon information and belief, a number of the Individual Defendants, including but not limited to Defendants Lee, Hee, Won and Chun, are senior officers of all of the Corporate Defendants.

18.   Upon information and belief, the Individual Defendants owned and operated the Corporate Defendants together as a "single integrated enterprise" with a common business purpose, utilizing the same business practices, policies, administrative office, accountant and employees.

19.   Upon information and belief, Defendant Lee and/or the Individual Defendants made all of the decisions for the Corporate Defendants, including decisions regarding hiring, firing, payment of wages, assignment of work, contractual matters, and all other administrative and company policy matters.

20.   Upon information and belief, at all relevant times, Defendant John Lee and/or the Individual Defendants actively managed, supervised, and directed, and continues actively

to manage, supervise and direct, the business and operations of the Corporate

Defendants, either directly or through agents.

21.    In sum, the Individual Defendants exercised complete dominion and control over the

Corporate Defendants.

## COLLECTIVE ALLEGATIONS

22.    The Named Plaintiffs bring the First and Third claims in this action against Defendants

as a collective action pursuant to the F.L.S.A., 29 U.S.C. § 216(b), on behalf of

themselves and all other similarly-situated current and former non-exempt employees

who have worked, and/or continue to work, for Defendants at any time during the six

years prior to the filing of this action through the entry of judgment in this action (the

"FLSA Collective").

23.    At all relevant times, the Named Plaintiffs and the FLSA Collective have been similarly

situated, have had substantially similar job requirements, have been governed by similar

pay practices and have been subjected to Defendants' decisions, policies, plans,

programs, practices, procedures, protocols, routines, and rules, all culminating in a

willful failure and refusal to pay them, among other things, the minimum wage and

overtime compensation.

24.    Defendants are liable under the FLSA for, inter alia, failing to properly compensate

Plaintiffs and the FLSA Collective, and as such, notice should be sent to the FLSA

Collective pursuant to 29 U.S.C. § 216(b).

25.    The FLSA Collective consists of numerous similarly-situated current and former

employees of Defendants who were subject to the conduct complained of herein and

who would benefit from the issuance of a court-supervised notice of the present lawsuit

and the opportunity to join the action. Those similarly-situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ALLEGATIONS

26.   This action is properly maintainable as a class action pursuant to the NY CPLR Sec. 901, et seq.

27.   This action is brought on behalf of the Named Plaintiffs and a class consisting of each and every other person ("Putative Class") who performed work for Defendants in the past six years.

28.   The Putative Class is so numerous that joinder of all members is impracticable.

29.   The precise size of the Putative Class is unknown to Plaintiffs. The facts on which the calculation of that number can be based presently are within the sole control of the Defendants.  In addition, the names of all potential members of the Putative Class are not known.

30.   The size of the Putative Class is believed to be in excess of 40 individuals.

31.   The questions of law and fact common to the Putative Class predominate over any questions affecting only individual members. Such questions include:

   a.   Whether Defendants failed to pay Plaintiffs the minimum wage, pursuant to the FLSA and NYLL;

   b.   Whether Defendants failed to pay Plaintiffs overtime compensation, pursuant to the FLSA and NYLL;

   c.   Whether the Defendants failed to pay Plaintiffs spread-of-hours pay, pursuant to the NYLL;

    d.   Whether the Defendants failed to provide Plaintiffs the documentation required by the Wage Theft Prevention Act;

    e.   Whether the Defendants are liable for damages claimed hereunder, including but not limited to compensatory damages, interest, costs and disbursements and attorneys' fees; and

    f.   Whether the Defendants should be enjoined from engaging in such practices in the future.

32.   The claims of the Named Plaintiffs are typical of the claims of the Putative Class.

33.   The Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Putative Class.

34.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## STATEMENT OF FACTS

### FACTS COMMON TO ALL PLAINTIFFS

35.   Upon information and belief, at all relevant times, Defendants acted as Plaintiffs' employers, within the meaning contemplated pursuant to 29 U.S.C. § 203(d).

36.   Upon information and belief, at all relevant times, Plaintiffs were, and a number of the Named Plaintiffs continue to be, employees of Defendants, within the meaning contemplated pursuant to 29 U.S.C. § 203(e).

37.   Upon information and belief, at all relevant times, the activities of the Defendants constitute an "enterprise," within the meaning of Sections 3(r) and 3(s) of the FLSA, 29 U.S.C.§§ 203(r), (s).

38. Upon information and belief, the Corporate Defendants constitute an "enterprise engaged in commerce" within the meaning contemplated pursuant to 29 U.S.C. § 201 et seq., and the cases interpreting it.

39. Defendant GGI, a grocery store, and Defendant H&Y, a meat market, are adjacent to each other, sharing a common wall.

40. Defendant Rainbow is located several feet away and is separated by a single store located in between Defendant H&Y and Rainbow.

41. Upon information and belief, Plaintiffs have been assigned to work in more than one of the Corporate Defendants' locations.

42. Upon information and belief, Defendant Lee and/or the other Individual Defendants managed and exercised control over all Plaintiffs throughout the Corporate Defendants' locations.

43. Upon information and belief, Defendants had a regular practice of assigning one or more of the Plaintiffs to work at the various Corporate Defendants' locations on an as-needed basis.

44. Upon information and belief, Defendants utilized the office located in the basement of Defendant GGI as the principal base of operations for all Corporate Defendants.

45. Upon information and belief, Defendants utilize and employ the same on-site accountant for all Corporate Defendants.  Upon information and belief, Defendants' accountant works out of the office in the basement of Defendant GGI approximately three days a week.

46. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly have engaged in a policy, pattern, and/or practice of violating the FLSA and NYLL. This policy, pattern, and/or practice has included but is not limited to:

   a. willfully failing to pay Plaintiffs the proper minimum wage for each hour worked;

   b. willfully failing to pay Plaintiffs any overtime compensation at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek;

   c. willfully failing to pay Plaintiffs any spread-of-hours pay;

   d. willfully failing to keep accurate records of Plaintiffs work hours and pay as required by the FLSA and NYLL.

### PLAINTIFF DAMACIO DIAZ RAMIREZ

47. Defendants employed Plaintiff Ramirez from approximately November 2010 through September 30, 2016.

48. Plaintiff Ramirez worked an alternating schedule of 5 and 6 days every other week.

49. Plaintiff Ramirez worked 14 hours a day, 7:00 a.m. to 9:00 p.m., throughout his employment until approximately mid-February 2016, when his work hours were reduced to 12 hours a day, 7:00 a.m. to 7:00 p.m.

50. From approximately November 2010 through December 2013, Defendants paid Plaintiff Ramirez  $336 per week for 5-day workweeks and $416 per week for 6-day workweeks.

51. From approximately January 2014 through December 2014, Defendants paid Plaintiff Ramirez  $376 per week for 5-day workweeks and $456 per week for 6-day workweeks.

52. From approximately January 2015 through late December 2015, Defendants paid Plaintiff Ramirez $426 per week for 5-day workweeks and $506 per week for 6-day workweeks.

53.  From approximately late December 2015 through early January 2016, Defendants paid Plaintiff Ramirez $476 per week for 5-day workweeks and $556 per week for 6-day workweeks.

54.  From approximately January 2016 through July 2016, Defendants paid Plaintiff Ramirez $576 per week for 5-day workweeks and $656 per week for 6-day workweeks.

55.  From approximately July 2016 through his last date of employment on September 30, 2016, Defendants paid Plaintiff Ramirez $650/week for 5-day workweeks and $750/week for 6-day workweeks.

56.  Throughout his employment, Defendants failed to provide Plaintiff Ramirez with a lunch break.

57.  For the majority of his employment, Defendants failed to pay Plaintiff Ramirez the minimum wage.

58.  Throughout his employment, Defendants failed to pay Plaintiff Ramirez overtime compensation.

59.  Throughout his employment, Defendants failed to pay Plaintiff Ramirez spread-of-hours compensation.

60.  Throughout his employment, Defendants failed to provide Plaintiff Ramirez with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF RIGOBERTO GARCIA DIAZ

61.  Defendants have employed Plaintiff Diaz since approximately March 19, 2011.

62.  From approximately March 19, 2011 through approximately December 2014, Plaintiff Diaz worked 14 hours a day, 9:00 a.m. to 11:00 p.m.,  5 days a week, for Defendants.

63. From approximately March 19, 2011 through approximately December 2012, Defendants paid Plaintiff Diaz $333 per week.

64. From approximately December 2012 through December 2014, Defendants paid Plaintiff Diaz $460 per week.

65. In approximately the end of December 2014, Plaintiff Diaz began working alternating schedules of 5 days and 6 days every other week. Plaintiff Diaz continued to work 14 hours a day, 9:00 a.m. to 11:00 p.m., regardless of whether he worked 5 or 6 days a week.

66. From approximately December 2014 through approximately February 2015, Defendants paid Plaintiff Diaz $460 per week for 5-day workweeks and $550 per week for 6-day workweeks.

67. From approximately February 2015 through approximately July 2015, Defendants paid Plaintiff Diaz $550 per week for 5-day workweeks and $623 per week for 6-day workweeks.

68. From approximately July 2015 through October 2015, Defendants paid Plaintiff Diaz $566 per week for 5-day workweeks and $650 per week for 6-day workweeks.

69. On approximately October 1, 2015, Defendants reduced Plaintiff Diaz's work hours to 13 hours a day, 5:00 a.m. to 6:00 p.m.

70. Since approximately October 1, 2015, Defendants have paid Plaintiff Diaz $650 per week for 5-day workweeks and $750 per week for 6-day workweeks.

71. In approximately February 2016, Defendants reduced Plaintiff Diaz's work hours to 12 hours a day, 5:00 a.m. to 5:00 p.m.

72. On approximately September 15, 2016, Defendants further reduced Plaintiff Diaz's work hours to 11.5 hours a day, 5:00 a.m. to 4:30 p.m.

73. Throughout his employment, Defendants failed to provide Plaintiff Diaz with a lunch break.

74. For the majority of his employment, Defendants failed to pay Plaintiff Diaz the minimum wage.

75. Throughout his employment, Defendants failed to pay Plaintiff Diaz overtime compensation.

76. Throughout his employment, Defendants failed to pay Plaintiff Diaz spread-of-hours compensation.

77. Throughout his employment, Defendants failed to provide Plaintiff Diaz with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF JACINTO MENDEZ DIAZ

78. Defendants have employed Plaintiff Mendez Diaz since September 2011.

79. From approximately September 2011 through January 2012, Plaintiff Mendez Diaz worked 14 hours a day, 7:00 a.m. to 9:00 p.m., 5 days a week, and was paid $ 375 per week.

80. From approximately January 2012, Defendants required Plaintiff Mendez Diaz to work on an alternating schedule of 5 days and 6 days every other week, 14 hours a day, 7:00 a.m. to 9:00 p.m.

81. From approximately January 2012 through September 2013, Defendants paid Plaintiff Mendez Diaz $375 per week for 5-day workweeks and $430 per week for 6-day workweeks.

82.  From approximately October 2013 through November 2014, Defendants paid Plaintiff Mendez Diaz $480 per week for 5-day workweeks and $500 per week for 6-day workweeks.  During this period, Plaintiff Mendez Diaz continued to work 14 hours a day, 7:00 a.m. to 9:00 p.m.

83.  Plaintiff Mendez Diaz did not work for Defendants from approximately November 2014 through approximately March 2015.

84.  In approximately April 2015, Plaintiff Mendez Diaz returned to work for Defendants.

85.  From approximately April 2015 through approximately January 2016, Plaintiff Mendez Diaz worked 14 hours a day, 7:00 a.m. to 9:00 p.m., 5 days a week and Defendants paid him $530 per week.

86.  From approximately January 2016 through approximately May 2016, Plaintiff Mendez Diaz worked 14 hours a day, 7:00 a.m. to 9:00 p.m., 6 days a week and Defendants paid him $600 per week.

87.  From approximately May 2016 through approximately August 2016, Plaintiff Mendez Diaz worked 14 hours a day, 7:00 a.m. to 9:00 p.m., 6 days a week and Defendants paid him $650 per week.

88.  From approximately late-August 2016 through approximately mid-September 2016, Plaintiff Mendez Diaz worked 14 hours a day, 7:00 a.m. to 9:00 p.m., 6 days a week and Defendants paid him $700 per week.

89.  Since approximately mid-September 2016, Plaintiff Mendez Diaz has worked 12 hours a day, 11:00 a.m. to 11:00 p.m., 6 days a week and Defendants have paid him $720 per week.

90. Throughout his employment, Defendants failed to provide Plaintiff Mendez Diaz with a lunch break.

91. For the majority of his employment, Defendants failed to pay Plaintiff Mendez Diaz the minimum wage.

92. Throughout his employment, Defendants failed to pay Plaintiff Mendez Diaz overtime compensation.

93. Throughout his employment, Defendants failed to pay Plaintiff Mendez Diaz spread-of-hours compensation.

94. Throughout his employment, Defendants failed to provide Plaintiff Mendez Diaz with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF FLORENCIO DIAZ RAMIREZ**

95. Defendants employed Plaintiff Florencio Diaz Ramirez from approximately May 2012 through approximately November 15, 2015.

96. From approximately May 2012 through approximately mid-September 2012, Plaintiff Florencio Diaz Ramirez worked 12 hours a day, 7:00 a.m. to 7:00 p.m., 5 days a week and Defendants paid him $360 per week.

97. From approximately mid-September 2012 through approximately October 2014, Plaintiff Florencio Diaz Ramirez worked 5 days a week for Defendants.  On three of those five days he worked 12-hour shifts from 7a.m. to 7 p.m., and  two of those five days he worked 13-hour shifts from 10:00 a.m. to 11:00 p.m.

98. From approximately September 2012 through mid-June 2013, Defendants paid Plaintiff Florencio Diaz Ramirez $416 per week.

99. From approximately mid-June 2013 through approximately mid-November 2014, Defendants paid Plaintiff Florencio Diaz Ramirez $460 per week.

100. From approximately mid-November 2014 through approximately January 2015, Plaintiff Florencio Diaz Ramirez worked 6 days a week for Defendants, working 12-hour shifts, 7:00 a.m. to 7:00 p.m., on three of the days and 13-hour shifts, 10:00 a.m. to 11:00 p.m., on the other three days.  During this period, Defendants paid Florencio Diaz Ramirez $560 per week.

101. From approximately February 2015 through approximately November 15, 2015, Plaintiff Florencio Diaz Ramirez worked 6 days a week for Defendants, working 12-hour shifts, 7:00 a.m. to 7:00 p.m., on three of the days and 13-hour shifts, 10:00 a.m. to 11:00 p.m., on the other three days. During this period, Defendants paid Florencio Diaz Ramirez $650 per week.

102. Throughout his employment, Defendants failed to provide Plaintiff Florencio Diaz Ramirez with a lunch break.

103. Throughout his employment, Defendants failed to pay Plaintiff Florencio Diaz Ramirez the minimum wage.

104. Throughout his employment, Defendants failed to pay Plaintiff Florencio Diaz Ramirez overtime compensation.

105. Throughput his employment, Defendants failed to pay Plaintiff Florencio Diaz Ramirez spread-of-hours compensation.

106. Throughout his employment, Defendants failed to provide Plaintiff Florencio Diaz Ramirez with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF SANTOS VICENTE VASQUEZ HERNANDEZ**

107.  Defendants have employed Plaintiff Hernandez since approximately May 2009.

108.  From approximately May 2009 through November 2012, Plaintiff Hernandez worked 6 days a week 12 hours a day, from 7:00 a.m. to 7:00 p.m.

109.  From approximately January 2010 through approximately mid-May 2011, Defendants paid Plaintiff Hernandez $450 per week.

110.  From approximately mid-May 2011through mid-January 2012, Defendants paid Plaintiff Hernandez $490 per week.

111.  From approximately mid-January 2012 through mid-November 2012, Defendants paid Plaintiff Hernandez $550 per week.

112.  In approximately mid-November 2012, Defendants transferred Plaintiff Hernandez to the fruit department, where he began working 14 hours a day, 9:00 a.m. to 11:00 p.m., 6 days a week.  Plaintiff Hernandez worked this schedule from approximately mid-November 2012 to approximately mid-August 2016.

113.  From approximately mid-November 2012 through mid-August 2013, Defendants paid Plaintiff Hernandez $570 per week.

114.  From approximately mid-August 2013 through mid-February 2014, Defendants paid Plaintiff Hernandez $584 per week.

115.  From approximately mid-February 2014 through the end of February 2015, Defendants paid Plaintiff Hernandez $600 per week.

116.  From approximately March 2015 through approximately mid-May 2016, Defendants paid Plaintiff Hernandez $620 per week.

117. From approximately mid-May 2016 through approximately mid-August 2016, Defendants paid Plaintiff Hernandez $680 per week.

118. In approximately the third week of August 2016, Defendants reduced Plaintiff Hernandez's hours from 14 (9:00 a.m. to 11:00 p.m.) to 13 (10:00 a.m. to 11:00 p.m.) a day and increased his pay to $700 per week.

119. In approximately the third week of September 2016, Defendants increased Plaintiff Hernandez's pay to $720 per week, for a schedule of 13 hours a day (10:00 a.m. to 11:00 p.m.), six days a week.

120. Throughout his employment, Defendants failed to provide Plaintiff Florencio Diaz Ramirez with a lunch break.

121. For most of his employment, Defendants failed to pay Plaintiff Hernandez the minimum wage.

122. Throughout his employment, Defendants failed to pay Plaintiff Hernandez overtime compensation.

123. Throughput his employment, Defendants failed to pay Plaintiff Hernandez  spread-of-hours compensation.

124. Throughout his employment, Defendants failed to provide Plaintiff Hernandez with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF SANTOS RAMIREZ DIAZ**

125. Defendants have employed Plaintiff Santos Ramirez since approximately late September 2015.

126. Throughout his employment, Plaintiff Santos Ramirez has worked 12 hours a day, 7:00 a.m. to 7:00 p.m., 6 days a week.

127. From approximately late September 2015 through late March 2016, Defendants paid Plaintiff Santos Ramirez $520 per week.

128. From approximately late March 2016 to late July 2016, Defendants paid Plaintiff Santos Ramirez $540 per week.

129. From approximately late July 2016 to date, Defendants have paid Plaintiff Santos Ramirez was paid $560 per week.

130. Throughout his employment, Defendants failed to provide Plaintiff Santos Ramirez with a lunch break.

131. Throughout his employment, Defendants failed to pay Plaintiff Santos Ramirez the minimum wage.

132. Throughout his employment, Defendants failed to pay Plaintiff Santos Ramirez overtime compensation.

133. Throughput his employment, Defendants failed to pay Plaintiff Santos Ramirez spread-of-hours compensation.

134. Throughout his employment, Defendants failed to provide Plaintiff Santos Ramirez with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF MILTON AROLDO DIAZ ALONSO

135. Defendants employed Plaintiff Alonso from approximately mid-March 2014 through approximately August 2016, excluding approximately three months in 2015.

136. Throughout his employment, Plaintiff Alonso worked a schedule of 6 days a week, working 13 hours a day four days a week, 13.75 hours a day one day a week and 11 hours a day one day a week.

137. From approximately mid-March 2014 through approximately mid-June 2014, Defendants paid Plaintiff Alonso $680 per week.

138. From approximately mid-June 2014 through approximately mid-May 2015, Defendants paid Plaintiff Alonso $700 per week.

139. Plaintiff Alonso did not work for Defendants from approximately mid-May 2015 through approximately mid-August 2015.

140. At Defendants' request, Plaintiff Alonso resumed working for Defendants in approximately mid-August 2015.  Upon his return, Plaintiff Alonso worked the same 6-day schedule, working 13 hours a day on the first four days, 13.75 hours, the next day, and 11 hours on the last day.

141. Upon his return, Defendants paid Plaintiff Alonso $750 per week.

142. From approximately late June 2016 through approximately August 2016, Defendants paid Plaintiff Alonso $800 per week.

143. Throughout his employment, Defendants failed to pay Plaintiff Alonso overtime compensation.

144. Throughput his employment, Defendants failed to pay Plaintiff Alonso spread-of-hours compensation.

145. Throughout his employment, Defendants failed to provide Plaintiff Alonso with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF HECTOR JOEL BENTANCOURTH IXCOY**

146. Defendants have employed Plaintiff Ixcoy since approximately July 28, 2012.

147. Defendants required Plaintiff Ixcoy to work at both Defendant GGI and Defendant H&Y on an as-needed basis.

148.  From approximately July 28, 2012 through December 2013, Plaintiff Ixcoy worked 12 hours a day, 7:00 a.m. to 7:00 p.m.,  6 days a week.

149.  From approximately July 28, 2012 through March 2013, Defendants paid Plaintiff Ixcoy $450 per week.

150.  From approximately March 2013 through December 2013, Defendants paid Plaintiff Ixcoy $500 per week.

151.  From approximately December 2013 through September 24, 2016, Plaintiff Ixcoy worked 12 hours a day, 10:30 a.m. to 10:30 p.m., 6 days a week.

152.  From approximately January 2014 through February 2015, Defendants paid Plaintiff Ixcoy $550 per week.

153.  From approximately February 2015 through February 2016, Defendants paid Plaintiff Ixcoy $600 per week.

154.  From approximately February 2016 through September 24, 2016, Defendants paid Plaintiff Ixcoy $700 per week.

155.  On approximately September 24, 2016, Defendants reduced Plaintiff Ixcoy work hours to 11 hours a day and increased his pay to $720 per week.

156.  For the majority of his employment, Defendants failed to pay Plaintiff Ixcoy the minimum wage.

157.  Throughout his employment, Defendants failed to pay Plaintiff Ixcoy overtime compensation.

158.  Throughout his employment, Defendants failed to pay Plaintiff Ixcoy spread-of-hours compensation.

159. Throughout his employment, Defendants failed to provide Plaintiff Ixcoy with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF JORGE PONCE**

160. Defendants have employed Plaintiff Ponce since approximately January 2010.

161. From approximately January 2010 through April 2010, Plaintiff Ponce worked Mondays through Saturdays, from 7:00 a.m. to 5:00 p.m.

162. From approximately April 2010 through July 2013, Plaintiff Ponce worked Mondays through Saturdays, from 7:00 a.m. to 7:00 p.m.

163. From approximately August 2013 through October 2016, Plaintiff Ponce worked Mondays through Saturdays, from 7:00 a.m. to 7:00 p.m., and Sundays from 7:00 a.m. to 10:30 a.m.

164. In approximately October 2016, Defendants reduced Plaintiff Ponce's workweek by a day, giving him Wednesdays off.

165. Throughout his employment, Defendants paid Plaintiff Ponce $900 per week.

166. Throughout his employment, Defendants failed to pay Plaintiff Ponce overtime compensation.

167. Throughout his employment, Defendants failed to provide Plaintiff Ponce with the documentation required under the Wage Theft Prevention Act.

**PLAINTIFF MILVIA ROSADO**

168. Defendants employed Plaintiff Rosado from approximately May 9, 2012 through February 7, 2015.

169. From approximately May 9, 2012 to June 2012, Plaintiff Rosado worked 10 hours a day, 9:00 a.m. to 7:00 p.m., 6 days a week.

170. From approximately June 2012 through July 2012, Plaintiff Rosado worked 10 hours a day, 12:00 p.m. to 10:00 p.m., 6 days a week.

171. From approximately August 2012 through September 2014, Plaintiff Rosado worked 7 hours a day, 3:00 p.m. to 10:00 p.m., 5 days a week, and 12 hours a day, 10:00 a.m. to 10:00 p.m. on Sundays.

172. From approximately May 9, 2012 through May 8, 2013, Defendants paid Plaintiff Rosado $7.25 per hour for all hours worked regardless of the number of hours worked.

173. From approximately May 9, 2013 through her last date of employment on February 7, 2015, Plaintiff Rosado was paid $8.25 per hour for all hour worked regardless of the number of hours worked.

174. From approximately September 2014 through her last date of employment on February 7, 2015, Plaintiff Rosado worked 9 hours a day, 12:00 p.m. to 9:00 p.m., 5 days a week and 8 hours a day, 7:00 a.m. to 3:00 p.m., on Sundays.

175. For the majority of her employment, Defendants failed to pay Plaintiff Rosado the minimum wage.

176. Throughout her employment, Defendants failed to pay Plaintiff Rosado overtime compensation.

177. Defendants failed to pay Plaintiff Rosado spread-of-hours compensation for her work on Sundays from approximately August 2012 through September 2014.

178. Throughout her employment, Defendants failed to provide Plaintiff Rosado with a lunch break.

179. Throughout her employment, Defendants failed to provide Plaintiff Rosado with the documentation required under the Wage Theft Prevention Act.

### PLAINTIFF JUAN ANTONIO PEREZ

180. Defendants have employed Plaintiff Perez since approximately October 2013.

181. From approximately October 2013 through August 2016, Plaintiff Perez worked 12 hours a day, 7:00 a.m. to 7:00 p.m., 6 days a week.

182. From approximately October 2013 through March 2014, Defendants paid Plaintiff Perez $450 per week.

183. From approximately March 2014 to June 2015, Defendants paid Plaintiff Perez $500 per week.

184. From approximately June 2015 to July 2016, Defendants paid Plaintiff Perez $600 per week.

185. From approximately July 2016 to August 2016, Defendants paid Plaintiff Perez $650 per week.

186. Since approximately August 2016, Plaintiff Perez has worked 12 hours a day, 10:30 a.m. to 10:30 p.m., on Mondays and Tuesdays; 12 hours a day, 7:00 a.m. to 7:00 p.m., on Wednesdays; 12 hours a day, 10:30 a.m. to 10:30 p.m., on Thursdays; and 12 hours a day, 9:00 a.m. to 9:00 p.m., on Saturdays.

187. Since approximately August 2016, Defendants have paid Plaintiff Perez approximately $600 per week.

188. For the majority of his employment, Defendants failed to pay Plaintiff Perez the minimum wage.

189. Throughout his employment, Defendants failed to pay Plaintiff Perez overtime compensation.

190. Throughout his employment, Defendants failed to pay Plaintiff Perez spread-of-hours compensation.

191. Throughout his employment, Defendants failed to provide Plaintiff Perez with the documentation required under the Wage Theft Prevention Act.

## FIRST CAUSE OF ACTION

### FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE

192. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

193. Defendants are employers within the meaning contemplated in FLSA 29 U.S.C. § 203(d).

194. Plaintiffs, are employees of Defendants within the meaning contemplated in FLSA  29 U.S.C. § 203(e).

195. Defendants were required to pay Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

196. Defendants willfully and knowingly failed to pay Plaintiffs the required minimum wages under the FLSA for each hour worked.

197. Defendants also violated Section 211(c) of the FLSA, 29 U.S.C. § 211(c), by failing to keep required records.

198. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

199. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

200. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

201. Defendants are employers within the meaning contemplated in NYLL § 651(6).

202. Plaintiffs are employees within the meaning contemplated in NYLL §§ 2 and 651(5).

203. The minimum wage provisions set forth in the NYLL and its supporting regulations apply to Defendants and Plaintiffs.

204. Defendants were required to pay Plaintiffs at a rate not less than the minimum wage rate under the NYLL for all hours worked.

205. Defendants willfully failed to pay Plaintiffs the minimum wage for each hour worked.

206.  Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6, and Sections 195(4) and 661 of the New York Labor Law.

207. By virtue of Defendants' failure to pay Plaintiffs the minimum wage for all hours worked, Defendants have willfully violated NYLL Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.1.

208. As a result of the unlawful acts of the Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq*.

### THIRD CAUSE OF ACTION

### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

209. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

210. Plaintiffs are employees, within the meaning contemplated in FLSA, 29 U.S.C. § 203(e).

211. Defendants constitute an employer within the meaning contemplated in FLSA, 29 U.S.C. § 203(d

212. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs.

213. Defendants willfully, knowingly and repeatedly refused to pay Plaintiffs overtime compensation at the statutory rate of time-and-a-half for all hours worked in excess of forty hours per workweek, as required by the FLSA.

214. Defendants also violated Section 211(c) of the FLSA, 29 U.S.C. § 211(c), by failing to keep required records.

215. Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

216. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to

recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION

### NEW YORK LABOR LAW – UNPAID OVERTIME

217.  Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

218.  The overtime provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and Plaintiffs.

219.  Defendants failed to pay Plaintiffs overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) each week, as required by the NYLL.

220.  Defendants have willfully failed to record, credit, or properly compensate Plaintiffs for work performed in excess of forty (40) hours per workweek.

221.  Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

222.  By virtue of Defendants' failure to pay Plaintiffs, Defendants have willfully violated NYLL Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.2.

223.  As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts,

liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation

pursuant to the New York Labor Law, N.Y. LAB. LAW § 650

### FIFTH CAUSE OF ACTION

### NEW YORK LABOR LAW – SPREAD-OF-HOURS PAY

224. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

225. Pursuant to 12 NYCRR § 142-2.4, Defendants were required to pay Plaintiffs an extra hour of pay for any split-shift or day in which the employee's "spread of hours" exceeds 10 hours. The relevant spread is the time between the beginning and the end of employee's work day including all working time, time off for meals, and time off duty, as defined by 12 NYCRR § 142-2.18.

226. Plaintiffs worked shifts with a spread of hours in excess of 10 hours per day but were never paid an extra hour of pay on each day on which they worked over 10 hours.

227. Defendants' failure to pay the required wages as set forth above was willful within the meaning of Sections 198 and 663 of the New York Labor Law.

228. Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

229. Plaintiffs are entitled to the unpaid wages required by New York Labor Law.

230. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq*.

## SIXTH CAUSE OF ACTION

### NEW YORK LABOR LAW – WAGE THEFT PREVENTION ACT VIOLATION

231. Plaintiffs repeat, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

232. Upon information and belief, Defendants failed to furnish Plaintiffs with the wage notice(s) required by NYLL § 195 (1).

233. Upon information and belief, Defendants failed to furnish Plaintiffs with the wage statement(s) required by NYLL § 195 (3).

234. Upon information and belief, Defendants' failure to furnish Plaintiffs with the notices and statements pursuant to NYLL § 195 (1) and (3) was willful and intentional.

235. NYLL § 195 (1) requires that employers furnish employees at the time of hire a notice containing, among other things, the rate or rates of pay and the basis thereof; the regular pay day designated by the employer, the name of the employer; any "doing business as" names used by the employer; the address of the employer's main office or principal place of business and the telephone number of the employer.

236. NYLL § 195(3) requires that employers furnish each employee with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

237. NYLL § 195(4) requires, among other things, that employers establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

238. NYLL § 661 requires that Defendants maintain, inter alia, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

239. 12 N.Y.C.R.R. § 142-2.6 requires Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, inter alia, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

240. N.Y.C.R.R. § 142-2.7 requires Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

241. Defendants failed to provide Plaintiffs with any of the requisite notices and statements described above in the foregoing paragraphs.

242. As a result of Defendants' failure to furnish the wage notices pursuant to NYLL 195(1), each of the plaintiffs is entitled to the maximum recovery of $5,000 for this violation, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(b).

243. As a result of Defendants' failure to furnish the wage statements pursuant to NYLL 195 (3), each of the plaintiffs is entitled to the maximum recovery of $5,000 for this violation, as well as attorneys' fees and costs, pursuant to NYLL § 198(1)(b).

## **DEMAND FOR TRIAL BY JURY**

244. Named Plaintiffs request a jury trial on all issues of fact and damages arising herein.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all other members of the FLSA Collective and Putative Class, respectfully request that this Court grant the following relief:

(1) That, at the earliest possible time, Named Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this court's issuance of court-supervised notice, been employed by Defendants as non-exempt employees.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper minimum hourly compensation, overtime compensation wages and/or spread-of-hours pay;

(2) Certification of this action as a class action pursuant to NY CPLR Sec. 901, et seq. on behalf of the members of the Putative Class and appointing the Named Plaintiffs and their counsel to represent the Putative Class;

(3) Designation of Named Plaintiffs as representatives of the Putative Class, and counsel of record as Class Counsel;

(4) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

(5) Appropriate equitable and injunctive relief to remedy Defendant's violations of the FLSA and NYLL, including but not limited to an order enjoining Defendant from continuing its unlawful practices;

(6) An award of monetary damages to be determined at trial for wages owed, unpaid

overtime and spread-of-hours compensation, penalties, liquidated damages and all other

monies owed to Plaintiffs;

(7) An award of prejudgment and post judgment interest;

(8) An award of attorneys' fees and costs of this action;

(9) An injunction against the Defendants and its officers, agents, successors, employees,

representatives and any and all persons acting in concert with Defendants, as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth

herein;

(10)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
          October 23, 2016

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**

By: Steven Arenson
200 Park Avenue, Suite 1700
New York, New York 10166
(212) 490-3600

Attorneys for Named Plaintiffs and all others
similarly situated.